IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION
CASE NO: _____

**00-6103**

**CIV-GRAHAM**

| | |
|---|---|
| DAVID KIMBERLEY HACKETT, Individually and SAMUEL G. SWOPE, individually as Assignees of COURTESY AUTO GROUP, INC., a Florida Corporation,<br><br>      Plaintiffs,<br><br>vs.<br><br>ELECTRONIC DATA SYSTEMS CORPORATION, a foreign Corporation,<br><br>      Defendant. | CASE NO.: 98-1065-CIV-19-A<br>U.S. District Court, Middle District of Florida<br><br>**MAGISTRATE TURNOFF**<br><br>**DEFENDANT, ELECTRONIC DATA SYSTEMS CORPORATION'S MOTION TO COMPEL DISCOVERY FROM NON-PARTY, AUTONATION, INC.**<br>**(Memorandum of Law Included)** |

_____ /

The Defendant, ELECTRONIC DATA SYSTEMS CORPORATION ("EDS"), moves to compel non-party , AUTONATION, INC., F/K/A REPUBLIC INDUSTRIES, INC. ("AutoNation") to comply with the subpoena served on it by producing forthwith the subpoenaed documents.

**Introduction**

On May 19, 1999, EDS served a subpoena duces tecum on AutoNation seeking production of 15 categories of documents pertaining to the above-referenced matter. The subpoena required that the requested documents be produced by June 7, 1999. (Ex. A).

On June 4, 1999, AutoNation's in-house legal department requested an additional 20 days to produce documents in response to the subpoena. Based on the belief that AutoNation actually would produce the requested documents within this 20 day period, counsel for EDS agreed to the requested enlargement.



On July 2, 1999, after the expiration of the 20 day extension, the firm of Dearman & Gerson wrote to counsel for EDS and advised that it now was representing AutoNation with respect to the subpoena. AutoNation's new counsel represented that it was in the process of preparing a response to the subpoena concentrating on due diligence documents in AutoNation's possession and assignment documents. Counsel for EDS advised AutoNation's counsel that production under the subpoena was past due. (Ex. D) AutoNation's counsel disagreed under the erroneous belief that EDS has granted AutoNation yet another extension to comply with the terms of the subpoena. (Ex. B).

On July 9, 1999, more than a month after the date for compliance set forth in the subpoena, AutoNation served its response and objections to the subpoena. (Ex. C) In its response, AutoNation objected to each request set forth in the subpoena with boilerplate nonspecific objections. Notwithstanding its objections, AutoNation represented that responsive documents would be produced upon execution of a mutually-agreeable confidentiality agreement. Although such a confidentiality agreement had been entered even before AutoNation's response, AutoNation has failed and refused to produce all of the documents requested in the subpoena.

Subject to its myriad of objections, AutoNation also represented that certain responsive documents would be made available for review and inspection at a mutually agreeable time. On August 4, 1999, AutoNation produced sparse documentation partially responsive to only one of EDS' requests. AutoNation subsequently has refused to make any additional documents available for inspection despite EDS' repeated attempts to amicably resolve AutoNation's objections and any issues which AutoNation has concerning the requested documents. (Ex. D) As discussed below, this Court should enter

an order compelling AutoNation to produce documents responsive to each of EDS' requests.

## Background of Action

This action allegedly arises out of an oral contract entered between Courtesy and EDS on or about July 22, 1996. (Am. Compl. ¶ 5)  On July 3, 1997, Plaintiffs, former owners of Courtesy, allegedly received an assignment of this "lawsuit", and they bring this action as "the assignees of Courtesy." (Am. Compl. ¶ 3)  Plaintiffs' amended complaint contains two counts:  (1) breach of oral contract; and (2) breach of implied warranty of merchantability.

Plaintiffs allege that, according to an oral contract between EDS and Courtesy, EDS was to install the FMS [Financial Management System] accounting software system at the Courtesy automobile dealerships for customer assurance (beta) testing. (Am. Compl. ¶¶ 5, 7) Plaintiffs allege that EDS breached the contract and warranty by installing the FMS system at the dealerships before it was "finished and tested," and that the FMS software had numerous defects that botched the accounting system and the day to day operations of the dealerships. (Am. Compl. ¶ 11-13)

As a result of the alleged breach of contract and warranty, Plaintiffs claim Courtesy suffered damages. (Am. Compl. ¶ 14)  On December 7, 1998, pursuant to the parties' case management report and Rule 26(a)(1)(C), Plaintiffs disclosed that their total claimed damages amounted to $1,980,980 which amount was calculated "based upon the books and records of Courtesy." (Ex. E)  Allegations and deposition testimony during the course of the case indicate that Plaintiffs claim these damages were caused by problems experienced with the FMS system that was being developed and beta tested at Courtesy's stores beginning in December 1996.  Plaintiffs claim Courtesy was unable to determine its financial status for months due to purported problems with the FMS system.  Plaintiffs' damages calculation is based on a simplistic comparison of numbers on financial

statements (also referred to as operating reports) for an earlier seven-month period (December 1995-June 1996) with the seven-month period the FMS beta system was installed at Courtesy (December 1996-June 1997) and attributing all differences to the purported FMS problems.

Among the affirmative defenses asserted, EDS has alleged that Plaintiffs' claims are barred in whole or in part by Plaintiffs' or their assignor's (Courtesy's) actions or omissions that were the actual cause of any alleged damages. These actions or omissions include failing to provide the requisite resources for installation and operation of the FMS beta system, failing to perform the necessary steps prior to installation of the FMS beta system, failing to have an appropriate and sufficient computer system for installation of the FMS beta system, failing to adhere to the originally agreed to design requirements and requesting modifications to the design requirements during and after installation, and failing to have in place proper business processes that conformed to generally accepted accounting practices.[1]  In addition, EDS has pointed out that Plaintiffs and Courtesy knew that the FMS software was still in development at the time that the software was installed without charge for beta or customer assurance testing at Courtesy.  (Ans. to Am. Compl.)

Moreover, discovery to date has revealed that Courtesy's financial statements - which are mere summaries of other information - are subject to manipulation and alteration and may not reflect the actual financial condition and circumstances of Courtesy on the dates of the statements. (Ex. F at 225-26; Ex. G at 16-18, 25-33, 218-20, Ex. H at 206-07, 242)  Coincidentally, in the months preceding installation of the FMS beta software at Courtesy, Plaintiffs were secretly negotiating the sale of Courtesy to AutoNation, Inc., f/k/a Republic Industries, Inc. ("AutoNation), which sale was announced during the first

---

[1] Discovery has indicated that most of the problems experienced by Courtesy during the beta/customer assurance testing were due to user errors unrelated to the FMS software system, as well as due to general lack of competence and qualifications of Courtesy's business office personnel.

4

quarter of 1997. The sale closed in July 1997 with AutoNation taking over all seven of Courtesy's stores or dealerships; Plaintiff, Kim Hackett, has remained president of Courtesy as a wholly-owned subsidiary of AutoNation. (Ex. I at 7, 28, 297)

The AutoNation-Courtesy contract price was tied to Courtesy's financial statement of November 1996 - the last financial statement printed before conversion to the FMS beta system.[2] (Ex. I at 180; Ex. J at 113-17) The contract also provided for price adjustments on a look back at the time of closing, which on information and belief led to purchase price adjustments due to financial discrepancies uncovered by AutoNation with regard to Courtesy's pre-FMS books and accounting. A similar scenario exists as a result of Saturn Corporation's or one of its affiliates' nearly contemporaneous purchase of three Saturn stores back from AutoNation which AutoNation had acquired in the Courtesy deal. (Ex. G at 43-49)

### Memorandum of Law

AutoNation's objections contained in its belated July 9, 1999 response to EDS' subpoena were not timely served. Accordingly, all said objections, even if they were meritorious, have been waived. See Deal v. Lutheran Hosp. & Homes, 127 F.R.D. 166 (D. Alaska 1989); United States v. International Business Machines Corp., 70 F.R.D. 700 (S.D.N.Y. 1976). But AutoNation's objections are not only untimely, but also lacking in merit. Although AutoNation has represented it would produce responsive documents, it

---

[2] EDS finally obtained a copy of "a" November 30, 1996 financial statement, attached to the AutoNation-Courtesy contract, from AutoNation. Plaintiffs, Courtesy, and Courtesy's former accountant (who participated in the AutoNation negotiations) have claimed not to have a copy of that statement - although Kim Hackett has testified he has a complete copy of the AutoNation-Courtesy contract. (Ex. I at 26-27) In fact, Courtesy's CFO during the relevant time frame has testified that the November 1996 combined financial statement could not be printed from BusinessLine (the accounting software system used prior to the FMS beta installation), and he had to create it for AutoNation by using a spreadsheet, whereas Courtesy's controller at the time responsible for printing the financial statements has testified that that statement was printed from the BusinessLine system. (Ex. F at 254; Ex. K at 40-41, 176-77, 190-92) The legitimacy of any numbers reported on these financial statements - on which Plaintiffs' damages claim is entirely based - is in serious question and requires further discovery leeway.

5

has produced sparse documentation in response to the subpoena to date.  As set forth below, AutoNation's objections to the requests in the subpoena are without basis in law or fact and should be overruled.  AutoNation should be ordered to produce all responsive documents to each of the following requests forthwith.[3]

**1. All financial documents, including all audits, audit reports and related work papers, accountant reports of any name or description, appraisals, tax returns, financial statements, Financial Analysis Capabilities Through Scanning (FACTS) statements, income statements, profit and loss statements, balance sheets, charts of account, account balances, departmental accounts, expense accounts, sub accounts, general ledgers, subsidiary ledgers, journals, source journals, schedules, inventories, floor plans, and summary trial balances, relating to Courtesy or any business operation of Courtesy.**

**2. All financial documents, including all audits, audit reports and related work papers, accountant reports of any name or description, appraisals, tax returns, financial statements, Financial Analysis Capabilities Through Scanning (FACTS) statements, income statements, profit and loss statements, balance sheets, charts of account, account balances, departmental accounts, expense accounts, sub accounts, general ledgers, subsidiary ledgers, journals, source journals, schedules, inventories, floor plans, and summary trial balances, relating to any business operation sold by Courtesy to Republic.**

**3. All financial documents, including all audits, audit reports and related work papers, accountant reports of any name or description, appraisals, tax returns, financial statements, Financial Analysis Capabilities Through Scanning (FACTS) statements, income statements, profit and loss statements, balance sheets, charts of account, account balances, departmental accounts, expense accounts, sub accounts, general ledgers, subsidiary ledgers, journals, source journals, schedules, inventories, floor plans, and summary trial balances, relating to any business operation sold by Courtesy to Republic and later sold to Saturn Corporation, Saturn Retail of Florida, Inc. or some other Saturn-affiliated entity.**

*AutoNation's response(s) (to Nos. 1-3):  AutoNation objects to the extent this request seeks the disclosure of a trade secret, other confidential commercial information, seeks to invade the business practices, or trade practices privileges.  AutoNation objects to the production of tax returns and/or other confidential financial data.  AutoNation also objects to the production of these documents that are protected by the accountant-client privilege.  AutoNation objects to the extent this request is not calculated to lead to the discovery of admissible evidence.  AutoNation, however, will make the responsive non-privileged documents available for review and inspection upon the execution of a mutually-agreeable confidentiality agreement.*

*Status:  AutoNation has produced only a selected number of financial statements (a/k/a operating reports) that were attached as an exhibit to the Courtesy-AutoNation contract.*

---

[3] The time period covered by the requests in the subpoena was specified as January 1, 1994 to present. (Ex. A)

To date, AutoNation has made very few responsive documents available for inspection. AutoNation has also not provided any form of privilege log to identify any documents it may claim are "privileged." As discussed below, none of the boilerplate objections raised by AutoNation are meritorious.

**Relevancy**

AutoNation objects alleging the requested documents are not reasonably calculated to lead to the discovery of admissible evidence. In the first instance, AutoNation - as a nonparty - lacks standing to raise a relevancy objection. Plaintiffs have never asserted any objection on grounds of relevancy as clearly they could not since the requested documents are obviously relevant to the subject matter of this action.

As even Plaintiffs have tacitly conceded, the financial records of Courtesy are directly relevant to the issues in the present case. Indeed, Plaintiffs' alleged damages are expressly calculated based on a self-selected subset of these documents. Specifically, Plaintiffs damages have been calculated from numbers appearing on Courtesy's combined (for all stores) monthly operating reports (or financial statements) for selected months. The numbers on the combined reports are theoretically derived from the numbers on the operating reports for the individual stores, which numbers are, in turn, theoretically derived from Courtesy's other books and records.

In order for EDS to evaluate Plaintiffs' claimed damages and the contentions of Plaintiffs, EDS must be able to review all of Courtesy's financial data for at least two years before the FMS beta software was installed and for some period of time after that software was removed in July 1997. This is especially true given the suspect nature of some of these reports. EDS has been prevented from gathering sufficient information to form a complete and accurate picture of Courtesy's operations and financial condition at the relevant and material times. As the entire premise of Plaintiffs' claims and the damages sought are based upon a purported disruption of its business operations creating nearly $2 million in lost income and increased expenses, EDS is certainly entitled to this information

7

to test Plaintiffs' allegations which are premised only on self-selected combined operating reports that are subject to manipulation and alteration.

**Trade Secret**

AutoNation has failed to set forth any grounds for its contention that these requests seek "the disclosure of a trade secret, other confidential commercial information, seeks to invade the business practices, or trade privileges" of Courtesy. The Florida Uniform Trade Secrets Act defines a "trade secret" as:

> Information, including a formula, pattern, compilation, program, device, method, technique, or process that:
>
> > (a) Derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use . . .

§ 688.002(4), Fla.Stat.   AutoNation has made no showing that any of the requested documents fall within the definition of a protectable trade secret.

Even assuming AutoNation could establish that the documents contain trade secrets, this privilege is overcome by the circumstances presented in the case at hand.  In Freedom Newspapers, Inc. v. Egly, 507 So. 2d 1180, 1183-84 (Fla. 2d DCA 1987), the court held that an estate planning corporation which specialized in the rendition of services to closely held corporations, was not entitled to prevent disclosure of its methods of acquiring and assimilating information and ultimately rendering advice based on that information on the grounds that this information was privileged trade secrets where the requesting party had no real interest in any business techniques contained in the information.  The court further held that trade secret information may be ordered disclosed if sufficient need for the information is shown.  Id. at 1184.

As in Egly, any Courtesy "trade secrets" are discoverable because EDS is not Courtesy's competitor and has no real interest in the "trade secrets" of Courtesy.  In Auto Owners Ins. Co. v. Totaltape, Inc., 135 F.R.D. 199 (M.D. Fla. 1990), the court held that

8

production of the documents containing trade secrets or confidential information should be ordered "if the balance tips in favor of promoting the interests of facilitating the trial and doing justice as opposed to the interests of the claimant in maintaining secrecy." Id. at 203. The court held that the insured defendant was unlikely to obtain any competitive advantage over plaintiff as a result of obtaining plaintiff insurer's claims manuals and guidelines through discovery. Id. at 203. Because the parties were not competitors and the insured has no real interest in the business techniques, the court ordered production.

EDS clearly has no competitive interest in any Courtesy trade secrets (assuming any exist) nor is EDS a Courtesy competitor. EDS is only concerned with obtaining documents pertaining to its defense of the claims brought by Plaintiffs against EDS in this lawsuit - which claims were purportedly assigned by Courtesy to Plaintiffs. Further, as demonstrated herein, EDS has a great need for the requested information in order to analyze and formulate defenses to Plaintiffs' claims, which are based on the financial records of Courtesy.

In any event, EDS and Plaintiffs already have entered into a confidentiality agreement concerning discovery between the parties, which by stipulation covers any documents produced by AutoNation. AutoNation has never stated that the confidentiality agreement is inadequate to protect its (or Courtesy's) interests nor has it ever requested any additional terms of confidentiality. Its objection is simply frivolous and interposed for purposes of delay.

## Accountant-Client Privilege

AutoNation also seeks to avoid production by alleging that the requested materials are protected by the accountant-client privilege. As a preliminary matter, Rule 45(d)(2) specifically requires a party objecting to a subpoena on the basis of a privilege to expressly set forth the claim and support the claim "by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim." A review of AutoNation's general objections demonstrates that AutoNation has failed to comply with this requirement.

Plaintiffs' action against EDS is premised on the claim that Courtesy suffered damages as a result of the breach of a contract and warranty between EDS and Courtesy, and that Courtesy assigned its action against EDS to Plaintiffs. (Am. Compl. ¶ 3, 14) Plaintiffs claim nearly $2,000,000.00 in total damages, which figure was derived "based upon the books and records of Courtesy." Under the foregoing circumstances, Plaintiffs, as Courtesy's assignees, have clearly brought Courtesy's accounting "books and records" into issue, thus, waiving any privilege. Certainly, Courtesy could not withhold these documents if it had brought this action directly; it necessarily follows that AutoNation cannot withhold these documents after Courtesy assigned the action to Plaintiffs to bring. See In re Hillsborough Holdings Corporation, 176 B.R. 223, 238-39 (M.D. Fla. 1994) ("a party waives the attorney-client and accountant-client privileges which attach to various communications if that party 'injects into the case an issue which in fairness requires an examination of otherwise protected communications'"). See also Savino v. Luciano, 92 So. 2d 817 (Fla. 1957) (defendant who would rely upon certified public accountant's audit and report in proof of his defense and counterclaim, expressly or impliedly waived his right to insist that the audit and report was privileged); Nashville v. City Bank & Trust Co. v. Reliable Tractor, Inc., 90 F.R.D. 709, 712 (M.D. Ga. 1981) (citing Savino, the court held that the accountant-client privilege should not apply because the subject financial reports "were relevant and even necessary to proof of defendant's claims that there was a failure of

consideration in return for their notes and that their notes and their obligations on the notes were discharged").

  **4. All documents regarding, relating to or referring to any financial analyses, due diligence, negotiations, regulatory or other governmental review or approval, review or approval by the Republic and/or Autonation board of directors or shareholders, or any committee reporting thereto, relating to or concerning any proposed or actual acquisition of Courtesy or any of Courtesy's business operations by Republic and/or Autonation.**

*AutoNation's response: AutoNation objects to the extent this request seeks the disclosure of a trade secret, other confidential commercial information, seeks to invade the business practices, and trade practices privileges. AutoNation objects to the extent this request seeks documents protected under the accountant-client privilege, attorney-client and/or work product privileges. AutoNation objects to the extent this request is not calculated to lead to the discovery of admissible evidence. AutoNation, however, will make the responsive non-privileged documents available for review and inspection upon the execution of a mutually-agreeable confidentiality agreement.*

  **5. All letters of intent, proposed contracts or agreements, drafts of contracts or agreements, actual contracts or agreements, memoranda or other documents reflecting or relating to any negotiations or agreements of any kind regarding or relating to any proposed or actual acquisition of Courtesy or any of Courtesy's business operations by Republic and/or Autonation.**

*AutoNation's response: AutoNation objects to the extent this request seeks the disclosure of a trade secret, other confidential commercial information, seeks to invade the business practices, and trade practices privileges. AutoNation objects to the extent this request seeks documents protected under the accountant-client privilege, attorney-client and/or work product privileges. AutoNation objects to the extent this request is not calculated to lead to the discovery of admissible evidence. AutoNation further objects to the undefined, overly broad, ambiguous request for "documents of any kind." AutoNation, however, will make the responsive non-privileged documents available for review and inspection upon the execution of a mutually-agreeable confidentiality agreement.*

  **6. All documents regarding, relating to or referring to any financial analyses, due diligence, negotiations, regulatory or other governmental review or approval, review or approval by the Republic and/or Autonation board of directors or shareholders, or any committee reporting thereto, relating to or concerning any proposed or actual acquisition of former Courtesy business operations by Saturn Corporation, Saturn Retail of Florida, or some other Saturn-affiliated entity from Republic and/or Autonation.**

*AutoNation's response: AutoNation objects to the extent this request seeks the disclosure of a trade secret, other confidential commercial information, seeks to invade the business practices, and trade practices privileges. AutoNation objects to the extent this request seeks documents protected under the accountant-client privilege, attorney-client and/or work product privileges. AutoNation objects to the extent this request is not calculated to lead to the discovery of admissible evidence. AutoNation, however, will make the responsive non-privileged documents available for review and inspection upon the execution of a mutually-agreeable confidentiality agreement.*

7. **All letters of intent, proposed contracts or agreements, drafts of contracts or agreements, actual contracts or agreements, memoranda or other documents reflecting or relating to any negotiations or agreements of any kind regarding or relating to any proposed or actual acquisition of former Courtesy business operations by Saturn Corporation, Saturn Retail of Florida, or some other Saturn-affiliated entity from Republic and/or Autonation.**

*AutoNation's response: AutoNation objects to the extent this request seeks the disclosure of a trade secret, other confidential commercial information, seeks to invade the business practices, and trade practices privileges. AuoNation objects to the extent this request seeks documents protected under the accountant-client privilege, attorney-client and/or work product privileges. AutoNation objects to the extent this request is not calculated to lead to the discovery of admissible evidence. AutoNation further objects to the undefined, overly broad, ambiguous request for documents of any kind. AutoNation, however, will make the responsive non-privileged documents available for review and inspection upon the execution of a mutually-agreeable confidentiality agreement.*

8. **All closing documents regarding, relating to or referring to the acquisition of Courtesy or any of Courtesy's business operations by Republic and/or Autonation.**

*AutoNation's response: AutoNation objects to the extent these documents have been produced or are available from parties to this action. AutoNation objects to the extent this request seeks the disclosure of a trade secret or other confidential commercial information, or seeks to invade the business practices, trade practices, accountant-client, attorney-client and/or work product privileges. AutoNation, however, will make the responsive non-privileged documents available for review and inspection upon the execution of a mutually-agreeable confidentiality agreement.*

9. **All closing documents regarding, relating to or referring to the acquisition of any of Courtesy's former business operations by Saturn Corporation, Saturn Retail of Florida or any other Saturn-affiliated entity from Republic and/or Autonation.**

*AutoNation's response: AutoNation objects to the extent these documents have been produced or are available from parties to this action. AutoNation objects to the extent this request seeks the disclosure of a trade secret or other confidential commercial information, or seeks to invade the business practices, trade practices, accountant-client, attorney-client and/or work product privileges. AutoNation, however, will make the responsive non-privileged documents available for review and inspection upon the execution of a mutually-agreeable confidentiality agreement.*

10. **All documents generated or forwarded by any attorney, accountant or other financial analyst retained by Courtesy or Plaintiffs which were provided to Republic and/or Autonation in any way relating to, referring to or regarding Courtesy or the business operations of Courtesy or continuation of what were previously the business operations of Courtesy.**

*AutoNation's response: AutoNation objects to the extent this request seeks the disclosure of a trade secret or other confidential commercial information, seeks to invade the business practices, trade practices, accountant-client, attorney-client and/or work product privileges. AutoNation, however, will make the responsive non-privileged documents available for review and inspection upon the execution of a mutually-agreeable confidentiality agreement.*

*Status (Nos. 4-10)*:  *AutoNation has made a partial production responsive to Request No. 5, but has produced no documents in response to the other requests.  With regard to request No. 5, AutoNation produced only a copy of the core reorganization agreement by which it purchased Courtesy, financial statements that were appended as one exhibit to the agreement, and a copy of an index to schedules purportedly attached to the agreement. The core agreement itself reflects that the contract consists of all exhibits and schedules as well as all documents delivered at closing.  Amendments to the agreement, one of which EDS obtained from Plaintiffs, were also not produced.*

Each of these requests (Nos. 4-10) seeks information concerning the purchase of Courtesy (including its seven dealerships) by AutoNation, and the subsequent sale of the three Courtesy Saturn dealerships by AutoNation to Saturn or one of its affiliates, as well as the financial documents relating thereto.  The financial analyses and due diligence, as well as the other information requested, is clearly relevant to the subject matter of this action which involves at its heart the financial condition of Courtesy and its business operations over the time period of the requested documents.  Although AutoNation has produced a portion of the reorganization agreement by which it purchased Courtesy, the entire agreement has not been produced by any party nor has any portion of the agreement relating to AutoNation's sale of the Courtesy Saturn dealerships been produced.  These documents are important and discoverable because they likely contain admissions by Plaintiffs or their assignor relevant here, identify contracts that may be relevant to Plaintiffs' claims and allegations, and address the financial condition and valuation of Courtesy which underlies all Plaintiffs' claims and allegations.

AutoNation objects to some of these requests by asserting the information is available from parties to the action.  This objection is both legally and factually without merit.  The mere fact that information is available from another source is not a valid objection to production.  See Covey Oil Co. v. Continental Oil Co., 340 F.2d 993 (10th Cir.) (fact that documents subpoenaed are available from another source is not valid objection), cert. denied, 380 U.S. 964 (1965).  Moreover, although AutoNation claims the information is available from Plaintiffs, Plaintiffs have failed and refused to turn over such information asserting EDS must obtain it from others like Courtesy and AutoNation.

Although AutoNation, along with Plaintiffs and Courtesy, have alleged that some of these materials may contain confidential "trade secrets," no party or non-party has ever identified any portions of the agreements or materials it believes to be confidential. In any event, Plaintiffs and EDS have entered into a confidentiality agreement which would cover these documents by stipulation. Additionally, EDS has offered to enter into another mutually agreeable confidentiality agreement with AutoNation and Courtesy concerning the use and disclosure of these materials. (Ex. F) As such, any concerns regarding confidentiality are simply make-weight and spurious, intended only to delay and stonewall discovery.

AutoNation has made no showing of the applicability of any privilege (accountant-client, attorney-client, attorney work product) to the materials requested. Nor has AutoNation provided any description of any allegedly privileged materials as required by Rule 45. Indeed, one must wonder how documents turned over to another party in an arms length transaction (No. 10) could be considered privileged.

EDS otherwise adopts the discussion above concerning the other requests.

**11.    All documents regarding, relating to or referring to Electronic Data Systems Corporation (or EDS), the Financial Management System or software (or FMS), the Businessline system or software, the Saturn Dealer System, and/or the Dealerline system or software.**

*AutoNation's response*: *AutoNation objects to the scope of this request as it is beyond the applicable subject matter of this action and unduly burdensome. AutoNation, however, will make the responsive non-privileged documents available for review and inspection upon the execution of a mutually-agreeable confidentiality agreement.*

*Status*: *AutoNation has not produced any responsive documents.*

Again, although agreeing to produce responsive documents, none have been produced. As stated above, AutoNation has no standing to object to relevancy. Moreover, its relevancy objection is frivolous since the documents requested are directly related to those matters at issue in this case. Namely, Plaintiffs claim the FMS beta software system, that was to replace the BusinessLine system, which was a component of DealerLine and

the Saturn Retail System, all as developed by EDS, was defective and led to the damages claimed herein.

Further, AutoNation has made no showing that production of these documents would be unduly burdensome. When objecting to a discovery request on the grounds of burden, the "resisting party must make a particular and specific demonstration of fact and can not rely on simple conclusory assertions about the difficulty of complying with a discovery request." Coker v. Duke & Co., 177 F.R.D. 682, 686 (M.D. Ala. 1998). A party must substantiate an undue burden objection with detailed affidavits or other evidence establishing an undue burden. Id. at 686. See also Twin City Fire Ins. Co. v. Employers Ins. Of Wausau, 124 F.R.D. 652, 653 (D.Nev. 1989); FTC v. Shaffner, 626 F.2d 32, 38 (7th Cir. 1980).

> **12.    All documents regarding, relating to or referring to Courtesy's relationship and creditability with Barnett Bank and/or NationsBank, and all documents regarding, relating to, referring to, or reflecting communications between Courtesy (and/or Plaintiffs) and Barnett Bank (and/or NationsBank).**

*AutoNation's response: AutoNation objects to the extent this request seeks any documents after AutoNation acquired the Courtesy Auto group. AutoNation objects to the extent this request seeks the disclosure of a trade secret or other confidential commercial information, or seeks to invade the business practices, trade practices, accountant-client, attorney-client and/or work product privileges. AutoNation, however, will make the responsive non-privileged documents available for review and inspection upon the execution of a mutually-agreeable confidentiality agreement.*

*Status: AutoNation has not produced any responsive documents.*

This request was made in an abundance of caution due to allegations in the complaint that part of Plaintiffs' claimed damages related to lost credibility with Barnett Bank. Since that time, however, Plaintiffs have indicated that this alleged item of damage is not being pursued and have not included any such damages in their damages disclosures. (Ex. D) Accordingly, EDS withdraws this request subject to either Plaintiffs or the Court confirming this item of damage, and the allegations surrounding it, will not or cannot be pursued at trial.

15

**13. All documents provided by Courtesy and/or Plaintiffs to Republic and/or Autonation concerning any aspect of Courtesy's business operations after June 1996.**

*AutoNation's response: AutoNation objects to this request as it is vague and overly broad. Further, AutoNation objects to the extent this request seeks the disclosure of a trade secret or other confidential commercial information, or seeks to invade the business practices, trade practices, accountant-client, attorney-client and/or work product privileges. AutoNation, however, will make the responsive non-privileged documents available for review and inspection upon the execution of a mutually-agreeable confidentiality agreement.*

*Status: Except for a few financial statements attached as our exhibit to the Courtesy-AutoNation contract, AutoNation has produced no responsive documents.*

Soon after June 1996, Plaintiffs began negotiating the sale of Courtesy to AutoNation. Plaintiffs allege that from December 1996 through June 1997, the FMS software reeked havoc on Courtesy's business operations which caused nearly $2,000,000.00 in damages to Courtesy. EDS has raised defenses asserting that any damages (increased expenses or lost income) were associated with the way Courtesy was running its business operations and not FMS. This request, therefore, is directly relevant to the subject matter of this action.

EDS also adopts the discussion above with regard to the other requests.

**14. Any assignments and/or agreements of any kind between Plaintiffs and Republic and/or Autonation.**

*AutoNation's response: AutoNation objects to this request as it is vague and overly broad. Further, AutoNation objects to the extent this request seeks the disclosure of a trade secret or other confidential commercial information, or seeks to invade the business practices, trade practices, accountant-client, attorney-client and/or work product privileges. AutoNation further objects to the undefined, overly broad, ambiguous request for documents of any kind. AutoNation, however, will make the responsive non-privileged documents available for review and inspection upon the execution of a mutually-agreeable confidentiality agreement.*

*Status: AutoNation has not produced any responsive documents.*

If possible, the objections to this request are even more frivolous than AutoNation's objections to the other requests. Given that Plaintiffs' standing and entire action is premised on a purported assignment from Courtesy, it is inconceivable how the stated

objections could be applicable. This simply demonstrates the make weight nature of all
AutoNation's boilerplate objections. EDS adopts the discussion above with regard to the
other requests and asks the Court order production of any responsive documents forthwith.

**15. Any other documents regarding, relating to or referring to any aspect of
the financial condition, accounting methods and practices, and qualifications or
competency of the management, financial and/or accounting personnel at Courtesy or
any of its business operations both before and after the sale of any interest or
operations by Courtesy to Republic and/or Autonation.**

*AutoNation's response: AutoNation objects to this request to the extent it seeks individual
employment records and other private personnel documents. Further, AutoNation objects
to the extent this request seeks the disclosure of a trade secret or other confidential
commercial information, or seeks to invade the business practices, trade practices,
accountant-client, attorney-client and/or work product privileges. AutoNation objects to
the scope of this request as set forth in Paragraph 10 of the Definitions and Instructions
Section. AutoNation objects to the extent this request is not calculated to lead to the
discovery of admissible evidence. However, AutoNation will make the relevant documents,
which are in its possession and not privileged, available for review and inspection upon
the execution of a mutually-agreeable confidentiality agreement.*

*Status: AutoNation has not produced any responsive documents.*

One of EDS' defenses, supported by the testimony of many witnesses, is that the
Courtesy personnel who were using the FMS beta software lacked the necessary
qualifications and competency to use any accounting software - they did not even
understand their own jobs or the business processes and accounting principles necessary to
operate a business like Courtesy. Thus, documents pertaining to the qualifications or
competency of Courtesy management and account personnel are directly relevant to the
subject matter of this action.

EDS also contends that Courtesy's internal accounting practices and procedures did
not comply with generally accepted accounting practices and that Courtesy often
manipulated the accounting and financial records of its various dealerships in order to
balance or distort the books of each dealership. Documents pertaining to Courtesy's
accounting methods and practices bear direct relevance to this action. If Courtesy's own
accounting systems and business practices were deficient or flawed before the FMS
software was installed, the ability of the FMS software to operate as contemplated would

have been affected. Likewise, the flawed practices and procedures both before and after use of FMS would be relevant to exonerating FMS as the cause of any financial problems allegedly suffered by Courtesy.

## **Conclusion**

As discussed above, all the requested documents are relevant to the subject matter of this action or could lead to the discovery of admissible evidence. Further, AutoNation's boilerplate objections lack any basis in law or fact. Although AutoNation has represented it will produce responsive documents, months have passed and it has produced very little of the requested documentation. Accordingly, this Court should enter an order compelling AutoNation to fully comply with the subpoena duces tecum and produce all responsive documents forthwith.

**Certification of Compliance with Fed.R.Civ.P. 37(a)(2) and Local Rule 26.1.I**

Undersigned counsel has attempted to resolve the issues raised herein in good faith with counsel for AutoNation. However, counsel were unable to resolve the issues raised herein.

By: _____
    Paul L. Nettleton

## CERTIFICATE OF SERVICE

WE HEREBY CERTIFY that a true and correct copy of the foregoing has been furnished by U.S. Mail this 20th day of January, 2000 to Jessica Halperin, Esq., Killgore, Pearlman, Stamp, Ornstein & Squires, Attorneys for Plaintiffs, P.O. Box 1913, Orlando, Florida 32802-1913; Mark Dearman, Esq., Dearman & Gerson, Executive Pavilion, Suite 110, 300 Northwest 82nd Avenue, Plantation, Florida 33324 and Scott L. Lieberman, Esq., AutoNation USA, 110 S.E. 6th Street, 20th Floor, Fort Lauderdale, Florida 33301.

Respectfully submitted,

CARLTON, FIELDS, WARD,
EMMANUEL, SMITH & CUTLER, P.A.
P.O. Box 019101
Miami, FL 33131-9101
Telephone: (305) 530-0050
Facsimile: (305) 530-0055
Attorneys for Defendant EDS

By:_____
    PAUL L. NETTLETON
    Florida Bar Number 396583

2053204

# ADDITIONAL

# ATTACHMENTS

# NOT

# SCANNED

PLEASE REFER TO COURT FILE

# CIVIL COVER SHEET

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleading or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

**00-6103**

**CIV-GRAHAM**

**MAGISTRATE TURNOFF**

**(a) PLAINTIFFS**

David Kimberley Hackett, et al

**DEFENDANTS**

Electronic Data Systems Corporation

**(b) COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF** Orange Hillsborough
(EXCEPT IN U.S. PLAINTIFF CASES)

**COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT** Texas
(IN U.S. PLAINTIFF CASES ONLY)

NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED

**(c) ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)**

Jessica Halperin, Esq.
P.O. Box 1913
Orlando, FL 32802

**ATTORNEYS (IF KNOWN)** Paul L. Nettleton, Esq.
Carlton, Fields, Ward, Emmanuel, et al
100 S.E. 2nd St., Miami, FL 33131

**(d) CIRCLE COUNTY WHERE ACTION AROSE:**
DADE, MONROE, BROWARD, PALM BEACH, MARTIN, ST. LUCIE, INDIAN RIVER, OKEECHOBEE, HIGHLANDS

**II. BASIS OF JURISDICTION** (PLACE AN X IN ONE BOX ONLY)

☐ 1. U.S. Government Plaintiff
☐ 3. Federal Question (U.S. Government Not a Party)
☐ 2. U.S. Government Defendant
☒ 4. Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** (For Diversity Cases Only)
(PLACE AN X IN ONE BOX FOR PLAINTIFF AND ONE BOX FOR DEFENDANT)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☐ 1 | Incorporated or Principal Place of Business in This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☒ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. CAUSE OF ACTION** (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE. DO NOT CITE JURISDICTIONAL STATUTES UNLESS DIVERSITY.)

This action arises out of enforcement of Rule 45 non-compliane with non-party subpoena

**VIIa.** n/a **days estimated (for both sides) to try entire case** (see above under Cause of Action)

**V. NATURE OF SUIT** (PLACE AN X IN ONE BOX ONLY)

| A CONTACT | A TORTS | | B FORFEITURE PENALTY | A BANKRUPTCY | A OTHER STATUS |
|---|---|---|---|---|---|
| | **PERSONAL INJURY** | | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 States Reappointment |
| ☐ 110 Insurance | ☐ 310 Airplane | ☐ 362 Personal Injury-Med Malpractice | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ 120 Marine | ☐ 315 Airplane Product Liability | ☐ 365 Personal Injury-Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881 | **A PROPERTY RIGHTS** | ☐ 430 Banks and Banking |
| ☐ 130 Miller Act | ☐ 320 Assault, Libel & Slander | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 630 Liquor Laws | ☐ 820 Copyrights | ☐ 450 Commerce/ICC Rates/etc. B |
| ☐ 140 Negotiable Instrument | ☐ 330 Federal Employers' Liability | **PERSONAL PROPERTY** | ☐ 640 R.R. & Truck | ☐ 830 Patent | ☐ 460 Deportation |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 340 Marine | ☐ 370 Other Fraud | ☐ 650 Airline Regs | ☐ 840 Trademark | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 151 Medicare Act | ☐ 345 Marine Product Liability | ☐ 371 Truth in Lending B | ☐ 660 Occupational Safety/Health | **B SOCIAL SECURITY** | ☐ 810 Selective Service |
| ☐ 152 Recovery of Defaulted Student Loans (Excl Veterans) B | ☐ 350 Motor Vehicle | ☐ 380 Other Personal Property Damage | ☐ 690 Other | ☐ 861 HIA (1395ff) | ☐ 850 Securities/Commodities/Exchange |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits B | ☐ 355 Motor Vehicle Product Liability | ☐ 385 Property Damage Product Liability | **A LABOR** | ☐ 862 Black Lung (923) | ☐ 875 Customer Challenge 12USC3410 |
| ☐ 160 Stockholder's Suits | ☐ 360 Other Personal Injury | | ☐ 710 Fair Labor Standards Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 891 Agricultural Acts |
| ☐ 190 Other Contract X | | | ☐ 720 Labor Management Relations B | ☐ 864 SSID Title XVI | ☐ 892 Economic Stabilization Act |
| ☐ 195 Contract Product Liability | | | ☐ 730 Labor Management Reporting & Disclosure Act | ☐ 865 RSI (405(g)) | ☐ 893 Environmental Matters |
| **A REAL PROPERTY** | **A CIVIL RIGHTS** | **B PRISONER PETITIONS** | ☐ 740 Railway Labor Act | **A FEDERAL TAX SUITS** | ☐ 894 Energy Allocation Act |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate Sentence Habeas Corpus | ☐ 790 Other Labor Litigation | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 895 Freedom of Information Act |
| ☐ 220 Foreclosure B | ☐ 442 Employment | ☐ 530 General * | ☐ 791 Employee Ret. Inc. Security Act B | ☐ 871 IRS-Third Party 26 USC 7609 | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/Accommodations | ☐ 535 Death Penalty | | | ☐ 950 Constitutionality of State Statutes |
| ☐ 240 Torts to Land | ☐ 444 Welfare | ☐ 540 Mandamus & Other * | | | ☐ 890 Other Statutory Actions * |
| ☐ 245 Tort Product Liability | ☐ 440 Other Civil Rights | ☐ 550 Civil Rights * A or B | | | * A or B |
| ☐ 290 All Other Real Property | | | | | |

**VI. ORIGIN** (PLACE AN X IN ONE BOX ONLY)

☐ 1. Original Proceeding
☒ 2. Removed From State Court
☐ 3. Remanded from Appellate Court
☐ 4. Reinstated or Reopened
☐ 5. Transferred from another district (Specify)
☐ 6. Multidistrict Litigation
☐ 7. Appeal to District Judge from Magistrate Judgment

**VII. REQUESTED IN COMPLAINT** CHECK IF THIS IS A CLASS ACTION ☐ UNDER F.R.C.P. 23

**DEMAND $**

JURY DEMAND: ☒ YES ☐ NO
☐ Check YES only if demanded in complaint

**VIII. RELATED CASE(S) IF ANY** (See Instructions): Original action In Middle District of Florida

JUDGE _____ DOCKET NUMBER 98-1065-CIV-19-A

DATE 1/21/00

SIGNATURE OF ATTORNEY OF RECORD (Paul L. Nettleton) $150.00

UNITED STATES DISTRICT COURT
F-2
9/94

FOR OFFICE USE ONLY: Receipt No. 518361    Amount: _____

Date Paid: 1-21-00    M/fp: _____